<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JPMORGAN CHASE & CO., | : : : : : : : : : : : : | **Civil Action No. 15-cv-6288 (SRC)(CLW)** |
| Petitioner, | | |
| v. | | **OPINION** |
| JAMES CUSTER, | | |
| Respondent. | | |

**<u>CHESLER</u>**, District Judge

This matter comes before the Court upon the motion filed by Petitioner JPMorgan Chase & Co. ("Petitioner") to compel arbitration and stay Respondent James Custer's ("Respondent") pending state court action [Docket Entry 2]. Respondent opposes this motion, and has filed a cross-motion to dismiss the Petition to Compel Arbitration [Docket Entry 7]. The Court has considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Petitioner's motion to compel arbitration, and will deny Respondent's cross-motion to dismiss Petitioner's Petition to Compel Arbitration. Furthermore, the Court will stay the pending state court action.

**I.   BACKGROUND**

The Verified Petition to Compel Arbitration [Docket Entry 1] alleges the following facts. Petitioner is a corporation organized under the laws of Delaware, with its principal place of business in New York. (Pet. ¶ 1.) Respondent is a citizen of New Jersey. (Pet. ¶ 2.) Respondent

1

began working for Petitioner in 2011, and he last worked for Petitioner in Saddle Brook, New Jersey. (Pet. ¶ 6.)  On July 29, 2011, Respondent signed an offer letter accepting the terms of employment proposed by Petitioner. (Pet. ¶¶ 7-8; Pet. Ex. A; Brown Cert. Ex. 2.)  Petitioner required Respondent to consent to a Binding Arbitration Agreement ("Agreement") between the parties, governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (Pet. Ex. B.) Respondent signed the "Binding Arbitration Affirmation" in his offer letter, agreeing to the following provision:

> I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the **Binding Arbitration Agreement** [website omitted]. By signing below I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.

(Pet. ¶¶ 9-13; Pet. Ex. A; Brown Cert. Ex. 2) (emphasis in original).  The Agreement covers "all legally protected employment-related claims," except for (a) criminal complaints, and (b) claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefits laws (except for retaliation claims under these laws, which are covered under the Agreement).[1]  (Pet. Ex. B at ¶¶ 2-3.)  The Agreement provides specific instructions for initiating arbitration proceedings.  (*Id.* at ¶ 6.)  The Agreement also states that arbitration is the "exclusive forum for all Covered Claims" and that "[a]ny dispute as to the arbitrability of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration." (*Id.* at ¶ 8.)

---

[1] The Agreement does not cover actions seeking declaratory, emergency, temporary, or injunctive relief, or claims under the National Labor Relations Act, or claims for benefits under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Pet. Ex. B at ¶¶ 3-4.)

2

Around October 2013, Petitioner discharged Respondent from employment. (Pet. ¶ 24.) On September 15, 2014, Respondent filed a lawsuit in the Superior Court of New Jersey, Essex County, Law Division against Petitioner and his former supervisor Ana Maria Montoya ("Montoya"), alleging racial and/or national origin discrimination under the NJLAD, as well as retaliation and aiding and abetting liability under the NJLAD.  (Docket Number ESX-L-6472-14; Pet. ¶ 25; Brown Cert. Ex. 1.)  On November 14, 2014, Petitioner sent Respondent a copy of the Agreement and a copy of Respondent's signed Binding Arbitration Affirmation. (Pet. ¶ 26; Brown Cert. Ex. 2.)  Petitioner demanded that Respondent withdraw his state court complaint and proceed "in the appropriate forum." (Pet. ¶ 27; Brown Cert. Ex. 2.)  On December 16, 2014, the parties filed a stipulation of dismissal, without prejudice, of the pending state court action. (Pet. ¶ 30; Brown Cert. Ex. 4.)  Respondent then filed a Demand for Arbitration and Statement of Claims with the American Arbitration Association ("AAA") on December 11, 2014.  (AAA Case Number 01-14-0002-1866; Pet. ¶ 28; Brown Cert. Ex. 3.)  Petitioner filed an Answer in the arbitration action on February 13, 2015. (Pet. ¶ 31; Brown Cert. Ex. 5.)  Respondent stayed the arbitration action on April 10, 2015, and refiled his state court action against Petitioner and Montoya in the Superior Court of New Jersey, Essex County, Law Division on May 20, 2015. (Docket Number ESX-L-3435-15; Pet. ¶¶ 5, 34; Brown Cert. Exs. 7-8.)  Petitioner filed the Petition and a motion to compel arbitration before this Court on August 19, 2015 [Docket Entries 1-2.]

 II. DISCUSSION

  A. Court's Subject-Matter Jurisdiction to Consider the Petition

As a threshold matter, the parties dispute whether this Court has subject-matter jurisdiction to hear the instant Petition.  The FAA does not create independent federal-question

jurisdiction under 28 U.S.C. § 1331. *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 915 (3d Cir. 1994) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Petitioner claims that the Court may hear this Petition under diversity jurisdiction (28 U.S.C. § 1332), given that (1) the amount in controversy exceeds $75,000, and (2) the parties to this federal court action are diverse: Petitioner is a citizen of Delaware and New York, while Respondent is a citizen of New Jersey. Respondent asserts that diversity jurisdiction does not exist because Montoya, a citizen of New Jersey, is an indispensable party.

Federal Rule of Civil Procedure 19 governs whether a party is indispensable in a particular matter, by outlining a two-step analysis. In the first step, the Court must determine whether it is necessary to join the non-joined party, according to the standard provided by Rule 19(a). *Gen. Refractories Co. v. First Sale Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). So long as joinder will not deprive the court of subject-matter jurisdiction, a non-joined party must be joined if "the court cannot accord complete relief among existing parties" in the non-joined party's absence, or if the non-joined party has an interest in the litigation, and the non-joined party's absence may impede that party's ability to protect that interest or force the existing parties to risk inconsistent obligations. Fed. R. Civ. P. 19(a).

If joinder is required under Rule 19(a) but is not feasible, for instance because joinder would destroy diversity jurisdiction, the court must determine whether the non-joined party is indispensable under Rule 19(b). *Id.* The court weighs the following factors to determine if a party is indispensable: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which such prejudice can be avoided by protective provisions in the judgment or the shaping of relief; (3) the adequacy of the

4

judgment in the absence of the person; and (4) the availability of an adequate remedy for the plaintiff if the action is dismissed for non-joinder. Fed. R. Civ. P. 19(b). If the non-joined party is both necessary and indispensable to the action, the entire action must be dismissed. *Gen. Refractories*, 500 F.3d at 312 (citation omitted). The burden of proof rests on the party raising this defense to "show that the person who was not joined is needed for a just adjudication." 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1609 (3d ed. 2001).

Montoya is not a party to the Agreement between Petitioner and Respondent, and is not a party to the Petition before this Court. For Montoya to be indispensable under Rule 19(b) to this action, Respondent must first show that she is necessary to this action under Rule 19(a). The Court finds that Respondent did not adequately explain why Montoya is necessary to decide the sole issue before this Court—the motion to compel arbitration. Montoya's presence before this Court would be unrelated to the issue of whether the employment claims Respondent has brought must be arbitrated.[2] Furthermore, Montoya has not claimed an interest in the federal action,[3] and any prejudice to the parties arising from piecemeal litigation is overcome due to the FAA's strong bias favoring arbitration, as the Supreme Court has ruled that the FAA requires courts to enforce arbitration agreements "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone*, 460 U.S. at 20.

---

[2] Respondent seeks for this Court to interpret "parties" under § 4 of the FAA to include not only the parties to the federal Petition to Compel Arbitration, but also Montoya. This approach was explicitly rejected by the Second Circuit. *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("The 'parties' to which § 4 of the FAA refers are the parties to the petition to compel."). In addition, Montoya filed an answer in response to Respondent's AAA Claim, indicating that she consents to the arbitration process. (Brown Cert., Ex. 5.)

[3] The Court also notes that Montoya is unlikely to bring a later action, given the posture of the case, Montoya's role as an employee of Petitioner, and her assent to the arbitration process. (Brown Cert. Ex. 5.)

Even if Montoya were a necessary party to this Petition, she is certainly not indispensable. It is well-established that diversity jurisdiction "cannot be defeated by a non-diverse joint tortfeasor who is not a party to the federal action, unless that party is indispensable under Rule 19." *Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 490-91 (8th Cir. 2010) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). The Eighth Circuit has concluded that "every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration." *See id.* at 491 (listing cases). The Court finds on the first Rule 19(b) factor that a judgment rendered in Montoya's absence would not be overly prejudicial to Montoya, Petitioner, or Respondent, given that the risk of prejudice only arises from the possibility that this Court will interpret the Agreement differently from the state court. On similar fact patterns, the Fifth, Sixth, and Seventh Circuits found that this risk of prejudice did not rise to such a degree that it would support finding a non-joined party to be indispensable. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006) (citing *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203 (6th Cir. 2001); *Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 453 n.3 (7th Cir. 1977)). Given the very slight risk of prejudice found for the first Rule 19(b) factor, the second Rule 19(b) factor, the extent to which any prejudice can be reduced or eliminated, is basically unnecessary to consider in this analysis. On the third Rule 19(b) factor, the adequacy of the judgment in the absence of the person, if this Court issued a judgment requiring arbitration of the claims without the presence of Montoya, it would not be rendered inadequate if the state court also were permitted to rule on the issue of arbitrability. *See Brown*, 462 F.3d at 394 (citing *PaineWebber*, 276 F.3d at 205). Finally, on the fourth Rule 19(b) factor, the existence of an adequate alternative remedy at the state court is not

a sufficient reason to find that this action should not proceed forward into arbitration. *See Bio-Analytical Servs.*, 565 F.2d at 453. The Court finds that, as Montoya is neither necessary nor an indispensable party under Rule 19, the Court may exercise diversity jurisdiction over the Petition.

### B. *Younger* Abstention

Respondent asks this Court to abstain from deciding this motion, based on the abstention doctrine explained by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* abstention doctrine states that a federal court may properly abstain from exercising its jurisdictional powers when to do so would impermissibly interfere with ongoing state proceedings. *Id. Younger* is based less on judicial economy, and more on a recognition that state courts are as competent as federal courts to adjudicate constitutional questions. But "abstention rarely should be invoked and is appropriate only in a few carefully defined situations." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992), *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992) (internal citations omitted)). Although *Younger* was a criminal action, the Supreme Court subsequently has held that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings where important state interests are involved." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 423 (1982).

Given the Supreme Court's policy that abstention should only be practiced in rare circumstances, abstention in this case would be inappropriate. *See Moses H. Cone*, 460 U.S. at 14. The Supreme Court has explained that "Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22. Abstention would deny Petitioner access to the forum that it and

7

Respondent selected in the Agreement to resolve their disputes, should the Court find that there is a valid agreement to arbitrate. *See Olde Discount Corp. v. Tupman*, 1 F.3d 202, 213 (3d Cir. 1993). Furthermore, it would thwart Congress's intent that, despite the existence of a concurrent related action in state court, parties to a binding agreement under the FAA should move into arbitration rapidly. *Moses H. Cone*, 460 U.S. at 22; *see also Great W. Mortg. Corp. v. Peacock*, No. 96-0628, 1996 U.S. Dist. LEXIS 10041, at *8 (D.N.J. Apr. 9, 1996), *aff'd*, 110 F.3d 222 (3d Cir. 1997), *cert. denied*, 522 U.S. 915 (1997). For these reasons, this Court will not apply the *Younger* doctrine of abstention to this case.

### C. Motion to Compel Arbitration

Questions of arbitrability are presumed to be for judicial determination. *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012). "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980). A motion to compel arbitration is governed by the FAA, which "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Motions to compel arbitration should be analyzed under a Rule 12(b)(6) standard when arbitrability is apparent on the face of the Complaint and/or documents relied upon in the Complaint. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013). Where the Complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of

evidence outside the pleadings, and, if necessary, further development of the factual record. *Id.* at 774. In such circumstances, the motion should be adjudicated under the Rule 56 standard for summary judgment. *Id.*

This motion presents no need to explore factual issues or matters outside the Petition. The Complaint references the relevant facts and the language of the Agreement in detail, and Petitioner attached a copy of the Agreement to the Petition as an exhibit.[4] (Pet. Ex. B.) This motion can be resolved without further development of the factual record, and thus the Court will apply the Rule 12(b)(6) standard of analysis to this motion. To meet that standard, the Petition must show, through the facts alleged, that the movant is entitled to the relief sought. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

"Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 2013) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Indeed, the FAA requires that, before a court may order parties to submit their dispute to arbitration, it must find that (1) a valid agreement to arbitrate exists, and (2) the specific dispute falls within the substantive scope of the agreement. 9 U.S.C. § 4; *see also Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (setting forth two-step inquiry required on a motion to compel arbitration). Once the test has been satisfied, "the merits of the controversy are left for disposition to the arbitrator." *Great W. Mortg.*, 110 F.3d at 228 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

---

[4] The Third Circuit has ruled that "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

First, the Court must determine if the Agreement is in fact a valid agreement to arbitrate disputes between Petitioner and Respondent. Ordinary state contract law governs the validity and enforceability of arbitration agreements. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Leodori v. CIGNA Corp.*, 175 N.J. 293, 302 (2003), *cert. denied*, 540 U.S. 938 (2003). Contracts in New Jersey are enforceable where there is "a bargained for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Martindale v. Sandvik*, 173 N.J. 76, 88 (2002). "[C]onsistent with federal law, a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts. . . . [For an arbitration agreement] to be enforceable . . . a waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." *Leodori*, 175 N.J. at 303.

As Petitioner notes, Respondent does not dispute that he signed the Agreement as partial consideration for his employment with Petitioner, and furthermore he does not dispute that he understood the provisions of the Agreement as they applied to him. In fact, Respondent acknowledges that he actually pursued arbitration as a means to resolve this dispute, which indicates that he understood that the arbitration provisions of the Agreement applied to his claims against Petitioner. (Pet. ¶¶ 28-34; Brown Cert. Ex. 3.) Now, Respondent challenges the validity of the Agreement under *Atalese v. U.S. Legal Services Group, L.P.*, in which the New Jersey Supreme Court recently interpreted the FAA and state contract law to require that, for an arbitration agreement to be enforceable, it must include "clear and unambiguous" language indicating that the parties waived their rights to a jury trial. 219 N.J. 430, 444-46 (2014), *cert.*

*denied*, 135 S. Ct. 2804 (2015).[5] The Court did not mandate that an arbitration agreement include specific language or "magic words," so long as the language makes clear to the parties that "there is a distinction between resolving a dispute in arbitration and in a judicial forum" in a "simple, clear, understandable and easily readable way." *Id.* at 444-45. Put another way, "the [arbitration] clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Id.* at 447.

The Agreement is clear and unambiguous that Petitioner and Respondent agreed to settle nearly all employment-related disputes in arbitration, not in court. First, the title of the Agreement itself, "Binding Arbitration Agreement," supports the idea that this Agreement memorializes the intention of Petitioner and Respondent to arbitrate their disputes. Next, the Agreement as a whole makes clear that Petitioner and Respondent agreed to give up their rights to bring their claims in court. The opening paragraph of the Agreement states:

> JPMorgan Chase believes that if a dispute related to an employee's or a former employee's employment arises, it is in the best interests of both the individual and JPMorgan Chase to <u>resolve the dispute without litigation</u>. Most such disputes are resolved internally through the Firm's Open Communication Policy. When such disputes are not resolved internally, JPMorgan Chase <u>provides for their resolution by binding arbitration</u> as described in this Binding Arbitration Agreement . . .

(Pet. Ex. B) (emphasis added). The Agreement provides that "[a]ny and all 'Covered Claims'[6] . . . between me and JPMorgan Chase . . . <u>shall be submitted to and resolved by final and binding</u>

---

[5] The parties do not dispute that *Atalese* should apply to an arbitration agreement covering employment-related claims. *Atalese* references employment disputes in the context of a discussion of the New Jersey Supreme Court *Garkinfel* decision, stating that although a waiver-of-rights provision need not "list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights," employees should at least know that they have "'agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.'" 219 N.J. at 447 (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 135 (2001)).

[6] Paragraph 2 of the Agreement defines "Covered Claims" as "all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I now have or in the future may have

11

arbitration in accordance with this Agreement." (*Id.* at ¶ 1) (emphasis added).  The Agreement also states "the exclusivity of the Agreement and its use of arbitration as the sole and exclusive forum for all Covered Claims within its scope shall not be affected" if a portion of the Agreement is found to be void or unenforceable.  (*Id.* at ¶ 8) (emphasis added).  This underlined language in the Agreement demonstrates that the parties agreed to resolve disputes in arbitration, not in court.  Furthermore, the Agreement specifies that it does not cover "any action seeking **only** declaratory and/or emergency, temporary or preliminary injunctive relief . . . in a court of competent jurisdiction in accordance with applicable law . . ." (*Id.* at ¶ 3) (emphasis in original).  The Agreement thus delineates between how parties would seek immediate relief (in court) versus how parties would seek relief on all other claims (in arbitration).

       The Agreement also provides a detailed description of the arbitration process, showing the distinctions between arbitration and a judicial forum.   The Agreement's description of arbitration continues for nearly two pages, including details on: (1) how to initiate arbitration, including a provision that the arbitration be conducted before a neutral arbitration of the AAA unless the parties decide otherwise; (2) the timing of responses to arbitration demands; (3) the arbitrator's role in the arbitration process; (4) how arbitration fees will be paid, pursuant to the Agreement; (5) the role of legal counsel and interpreters in the arbitration process; (6) attendance and confidentiality at the arbitration hearing; (7) how discovery and pre-hearing motions work in the arbitration process; (8) how and when the arbitrator will decide the dispute; (9) available remedies ("[t]he arbitrator may grant any remedy or relief that would have been available to the

---

against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me . . ." (Pet. Ex. B ¶ 2.)

parties <u>had the matter been heard in court</u>"; and (10) how the arbitration decision will be enforced. (*Id.* at ¶ 7) (emphasis added). Conversely, the arbitration agreement in *Atalese* contained very little description as to what arbitration is, and gave scant details as to how the arbitration process would move forward under that arbitration clause. *Atalese*, 219 N.J. at 437. The language of the Agreement satisfies the requirement that the average consumer would understand that arbitration is not the same as a jury trial or appearing in court. *See id.* at 447. Taken together, the language of the Agreement makes clear that Petitioner and Respondent agreed to arbitrate their disputes.

Next, the Court must determine whether this specific dispute falls within the substantive scope of the Agreement. Respondent does not seriously dispute that the FAA applies to the Agreement. The FAA provides in part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. It is undisputed that the Agreement evidences a transaction involving commerce, given that courts have found that employment agreements involve commerce within the meaning of the FAA. *See, e.g.*, *Great W. Mortg.*, 110 F.3d at 227 (finding that "employees were not included within the class of those excepted from the operation of the FAA, and hence were required to arbitrate their disputes.").

The Court must apply state contract principles to determine the scope of an agreement to arbitrate. *First Options of Chi.*, 514 U.S. at 944. New Jersey law specifies that the intent of the

parties controls when interpreting a contract. *Pacifico v. Pacifico*, 190 N.J. 258, 266 (2007). The court "consider[s] what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose'" of the contract. *Id.* (quoting *Atl. N. Airlines, Inc. v. Schwimmer*, 12 N.J. 293, 302 (1953)). Furthermore, an employer's arbitration provision encompasses an employee's claim when the agreement "unambiguously sets forth the drafter's intention to arbitrate all employment-related claims," as such language would satisfy the requirement that "such clauses provide an unmistakable expression of an employee's willingness to waive his or her statutory remedies." *Leodori*, 175 N.J. at 302-03 (citations omitted).

> On this subject, the language of the Agreement states:
>
> Any and all 'Covered Claims' (as defined below) between me and JPMorgan Chase . . . shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.
>
> "Covered Claims" include <u>all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement</u>, that I now have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, <u>including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims</u> . . .

(Pet. Ex. B ¶¶ 1-2) (emphasis added).[7] The underlined language indicates that the parties to this Agreement intended to arbitrate most of their employment-related disputes, including disputes related to employment discrimination and retaliation claims. Respondent's claims allege race and

---

[7] Excluded claims under the Agreement include criminal claims, claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefit laws, claims under the National Labor Relations Act, and claims for benefits governed under the Employee Retirement Income Security Act of 1974. (Pet. Ex. B ¶ 3.)

14

national origin discrimination as well as unlawful retaliation. (Resp't Br. at 11.) These claims fall squarely into the scope of arbitrable claims outlined in the Agreement.

As a final note, the Court observes that there are numerous cases in which a district court compelled arbitration and the respondent in the action had previously filed a state court action. *See, e.g.*, *Great W. Mortg.*, 100 F.3d at 228; *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 83; *Northport Health Servs. of Ark., LLC*, 605 F.3d at 483. Thus, the Court is satisfied that this dispute should proceed to arbitration.

### D. Request to Stay Pending State Court Proceedings

Finally, Petitioner has requested that this Court stay the pending state court action while the parties arbitrate their disputes. (Docket Number ESX-L-3435-15, pending in the Superior Court of New Jersey, Essex County, Law Division). Respondent has not disputed Petitioner's arguments on this issue. Pursuant to the Anti-Injunction Act, federal courts may only issue injunctions to stay state court proceedings where at least one of the three following exceptions exist: (1) when an injunction is expressly authorized by Congress; (2) when an injunction is necessary in aid of the court's jurisdiction; or (3) when an injunction is necessary to protect or effectuate the court's judgments. 28 U.S.C. § 2283. Section 3 of the FAA does not expressly authorize a district court to enjoin the pending state court proceeding. 9 U.S.C. § 3; *see, e.g.*, *Ins. Newsnet.com, Inc. v. Pardine*, No. 1:11-CV-00286, 2011 WL 3423081, at *4 (M.D. Pa. Aug. 4, 2011). Courts in the Third Circuit have found that an injunction of a pending state court action pending arbitration falls under the "necessary in aid of its jurisdiction" exception, because the injunction is necessary to aid the court's exercise of its jurisdiction over the petition to compel arbitration. *See, e.g.*, *Specialty Bakeries, Inc. v. RobHal, Inc.*, 961 F. Supp. 822, 830 (E.D. Pa.

1997), *aff'd as modified and remanded*, 129 F.3d 726, 727-28 (3d Cir. 1997).[8]  Permitting Respondent to proceed in state court could potentially "eviscerate the arbitration process and make it a hollow formality, with needless expense to all concerned."  *Specialty Bakeries*, 961 F. Supp. at 830 (internal quotations omitted).  Therefore, the Court will stay the pending state court proceeding.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's motion to compel arbitration, and will deny Respondent's cross-motion to dismiss the petition.  Furthermore, the Court will grant Petitioner's request to stay the pending state court action, and will stay this action pending the completion of arbitration proceedings.  The Court will deny both parties' requests for attorney's fees in conjunction with this motion.  An appropriate Order will be filed herewith.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  March 10, 2016

---

[8] See also *Great W. Mortg.*, No. 96-0628, 1996 U.S. Dist. LEXIS 10041, at *8 (D.N.J. Apr. 9, 1996), *aff'd*, 110 F.3d 222 (3d Cir. 1997), *cert. denied*, 522 U.S. 915 (1997); *PaineWebber Inc. v. Faragalli*, No. CIV. A. 94-MC-0147, 1994 WL 440233 (E.D. Pa. Aug. 12, 1994), *aff'd*, 61 F.3d 1063 (3d Cir. 1995) (both cases affirming, without discussion, a district court's grant of a stay of a pending state court action).